FICKETT *v.* COHU *et al.*

(*Common Pleas of New York City and County, General Term.* June 4, 1888.)

1. TRUSTS—FAILURE OF TRUSTEE TO MAKE REPAIRS—RIGHT OF CESTUI QUE TRUST.
    Where a trustee under a will allowing the *cestui que trust* the free use of a dwelling-house during her life fails to keep the premises in tenantable condition, the *cestui que trust* has not the right to make such repairs, and look to the trustee for indemnity, as her proper remedy is by application for his removal.

2. SAME—LIABILITY OF ESTATE—ACTS OF ONE OF SEVERAL TRUSTEES.
    In such case, the trust-estate is not bound for repairs made by order of the *cestui que trust* and one of the trustees, as the concurrent action of all the trustees is necessary to bind the estate.

3. SAME—LIABILITY—FAILURE OF CESTUI QUE TRUST TO SHOW DAMAGE.
    An action against a trustee under such will for damages for failure to keep the premises in tenantable condition, and for having rented a portion of the same, is properly dismissed, where no evidence is offered showing wherein and to what extent the *cestui que trust* has suffered damage.

**4. WILL—CONSTRUCTION—NET INCOME.**

A trustee under a will providing that a beneficiary shall receive "one-third of the net income of all real estate * * * after all taxes, assessments, and interest due thereon are paid," should, in computing the share of such beneficiary, deduct only taxes, assessments, and interest on mortgages from the gross income, and not expenses of management and repairs, commissions, insurance, etc.

**5. SAME—RIGHT OF LEGATEE—ACCOUNT STATED.**

Where such improper deduction has been made, and the beneficiary's agent receives and receipts in full for her share of the income, not questioning the accuracy of the accounts, or the theory upon which they were made up, the account will be held to have been settled and closed.

**6. SAME—OBJECTION TO ACCOUNT.**

Where such beneficiary's agent, after acquiescing in such improper deduction for a time, objects to the same, and refuses to receipt in full, receipting for amounts paid as "on account," the doctrine of account stated cannot be invoked as to the accounts objected to.

**7. PLEADING—AMENDMENT—CHANGING CAUSE OF ACTION.**

An order allowing plaintiff to amend his complaint so as to bring in new parties does not authorize an amendment so as to include additional grounds of action accruing after the service of summons, and such new matter is properly disregarded.

Appeal from judgment on report of SAMUEL A. BLATCHFORD, Referee.

This action was commenced by the service of a summons in July, 1869. The original plaintiff was Hannah Tobias, the widow of Silas Tobias, deceased. The complaint set up quite a large number of alleged grounds or causes of action. It was not demurred to, and all the issues raised by the pleadings, except such of the same as were abandoned by the plaintiff, were litigated on the trial. The said Silas Tobias left his last will and testament, in which he provided, among other things, as follows: "*First.* I give, devise, and bequeath unto my beloved wife, Hannah, all the household furniture now in use in my house, in use by myself and her, and all the jewelry, of whatever nature or kind soever it may be, in use by her or myself, and one-third of the net income of all the real estate that to me now belongs, or to me may at the time of my decease belong, after all taxes, assessment, and interest due thereon are paid, to have and to hold said net third of the income of said real estate during her natural life; the proportion thereof to commence to be paid to her six months after my decease, and to continue to be paid her every six months thereafter until her decease, when the same shall cease, and shall then go and be paid to my heirs as hereinafter stated." The will appointed James G. McAdam, Francis Lippett, and Ann Eliza Cohu, one of these defendants, his executors. By a codicil subsequently made and published, said testator provided, among other things, as follows: "I hereby grant, give, and bequeath to my beloved wife, Hannah, in addition to the provision made for her in my last will and testament, hereto annexed, and hereby order and direct the executors in my said will named, the survivors or survivor of them, to give to my said wife, the free use and enjoyment of the following apartments in the house known as 'No. 615 Fourth street,' in the City of New York, as a residence: (1) The back dwelling-room in the third story of the said house; (2) the whole of the first floor of said house; (3) the kitchen of said house, with the right to the front basement and yard, now in the use and enjoyment of herself and me, for the same purposes now occupied and enjoyed by herself and me at the date hereof,—to have and to hold the same during the full period of her natural life until after her death and burial. * * * And I further order and direct that my said wife may, at her election, have, in lieu of the residence hereby provided, such other or different suitable residence in any other house belonging to me at the time of my decease." All the said executors named in said will qualified as such, but the said McAdam and the said Lippett died many years ago.

*Justus Palmer*, for appellant.    *Thomas Darlington*, for respondents.

LARREMORE, C. J.   The most important question litigated in this action is one of accounting between the defendant Cohu, as trustee under the will of Silas Tobias, deceased, with Hannah Tobias, his widow; but there are joined with it in the complaint several counts for damages suffered by said Hannah Tobias from the said Ann Eliza Cohu by reason of alleged malfeasance and misfeasance of the last latter in her capacity of trustee.   These claims for damages can be more readily disposed of, and will be considered first.   Two of them were abandoned on the trial, and the three remaining ones are:   (a) For the recovery of money spent by Hannah Tobias in repairing and putting into tenantable order the premises No. 615 Fourth street, in a portion of which the said Hannah Tobias was given a right of residence during her life.   (b) A claim for the recovery of damages by reason of the said Cohu having rented, for business purposes, a portion of the yard of the said Fourth-Street house. (c) A claim for the recovery of damages for the failure of the executrix to keep in repair and tenantable order said house and lot No. 615 Fourth street.

Undoubtedly, it was the duty of the trustee to keep the premises in a tenantable condition, and to make such repairs as from time to time became necessary; but the fact that she neglected this duty would not give the *cestui que trust* the right to make such repairs herself, and look to the trustee for indemnity.   This would be subverting the will by substituting the action and discretion of the *cestui que trust* for that of the trustee.   The proper remedy of a *cestui que trust*, under such circumstances, would be an application for the removal of the trustee on the ground of inefficiency or willful neglect of duty.   It appears that, in regard to this claim for repairs, the work was ordered and paid for by Mr. Palmer, the present plaintiff's attorney of record, as so directed by Mrs. Tobias, the *cestui que trust*, and under written authority from James G. McAdam, one of the executors.   The alleged written authority from said McAdam is lost.   But, under either view, Mr. Palmer's power to bind the estate would have been insufficient.   The *cestui que trust*, as above shown, could not authorize or contract for repairs to the trust-estate.   And the written authority from McAdam was invalid because he was acting as a trustee; and it is a familiar rule that the concurrent action of all the trustees is necessary to make a transaction valid and binding, and that one trustee cannot bind his associates by his individual act.   As to the alleged causes of action above designated as "*b*" and "*c*," it is sufficient, for a decision of this appeal, to say that no evidence was offered to show wherein and to what extent the *cestui que trust* suffered damage.   And I am of opinion that the result reached by the referee in dismissing the complaint as to all said alleged causes of action for damages was correct.

There remains the question of the accounting, which is a much more difficult one.   The controversy arises almost entirely from the meaning to be given to the words "net income" under the will of Silas Tobias.   The testator gives to his wife "one-third of the net income of all the real estate that to me now belongs, or that to me may at the time of my decease belong, after all taxes, assessments, and interest due thereon are paid."   It seems that, during the whole life-time of Hannah Tobias, the trustee deducted from the gross income of the estate all the charges and expenses connected with its use and management, including those for repairs, commissions, and insurance, and paid one-third of the balance, so ascertained, to Hannah Tobias as her share of the income.   The contention on the part of the plaintiff is that the trustee should have deducted only the taxes, assessments, and interest on mortgages from the gross income, paid one-third of that balance to Hannah Tobias, and then defrayed all other expenses out of the two-thirds of the income remaining.   The difference between the parties is, practically, that Mrs. Tobias' share of the income during her life was charged with and made to pay a proportion of the amounts expended for repairs, commissions, insurance, etc., when the terms of the will are that she is to receive "one-third of

the net income of all real estate, * * * after all taxes, assessments, and interest due thereon are paid." I think the appellant's theory of construction is the correct one in the present case. Usually, the phrase "net income" of real estate would mean the balance of the rents left after deducting therefrom all necessary charges and expenses, of every kind and nature, connected with the preservation and management of the land. Under ordinary circumstances, charges for repairs to buildings would certainly be included among items to be deducted from the gross rents of realty in order to determine the "net income" thereof. But in a will the actual intention of the testator, as deduced from the whole instrument, is, of course, to govern. And, furthermore, it is always competent to give a special definition or signification to an ordinary phrase in any instrument. The testator, in the will under consideration, seems to define "net income" as the gross rents of the real estate, less only taxes, assessments, and interest. This is the express language, and there is nothing in any other part of the document to show that he had any different meaning. The court of appeals in *Tobias* v. *Ketchum*, 32 N. Y. 319, took this view of the testator's intention in this will. In the opinion (page 328) it is said: "The rents and profits of all the real estate are given to them [*i. e.*, the trustees] for several purposes: (1) To keep down taxes, assessments, and interest by paying them; (2) to ascertain the 'net income' by deducting from the gross receipts the amount paid for those purposes; (3) to pay one-third of the 'net income' thus ascertained to the widow every six months; (4) to repair and insure the premises out of the residue; and (5) to retain the balance for division, and finally divide it among the daughters, or their children, after the decease of the widow." This action of *Tobias* v. *Ketchum* was not for construction of the will, but for admeasurement of dower. The court used the language above quoted by way of argument; and, perhaps, it was not strictly necessary for a decision of that case to discuss the meaning of "net income" as used in this will. Still, the language is valuable in the present discussion as showing what the opinion of the judges of that court was on such subject.

But, granting that the express language of the will must prevail, and that the widow was not chargeable with any share of the expenses for repairs, etc., the referee dismissed the complaint, as to any and all claims arising out of the misappropriation of income by the trustee, on the ground of accounts stated between the parties. It appears that during the greater part of her life, Mr. Justus Palmer, the plaintiff's attorney in this action, was attorney in fact for the said widow, Hannah Tobias; that it was his custom to call semi-annually upon the defendant Ann Eliza Cohu, the sole acting trustee of the estate, and receive from her, and receipt for, the share of the income belonging to said widow. At such times said trustee would exhibit to Mr. Palmer a complete statement for the preceding half year, showing on the debit side thereof the receipts of rent and income of the estate, and on the credit side thereof the payments made by her in the administration of her trust. Such payments so made included, besides taxes, assessments, and interest on mortgages, money spent for repairs, insurance, and commission, in fact, all the items of expense, the allowance of which the plaintiff is now seeking to repudiate. It is not denied that Mr. Palmer was the duly-constituted agent and attorney for said Hannah Tobias, deceased. The referee has found,— and there is abundant evidence to support his finding,—that neither said Hannah Tobias nor said Justus Palmer ever questioned the accuracy of any of these accounts, or the theory upon which they were made up. The will provided for semi-annual payments; and such accounts purported to be, and were understood to be, complete statements of account between the parties up to the respective dates thereof, and they were not disputed until some time in 1867. Under all these circumstances, I see no reason why the principle of account stated should not be applied. There is no mutual mistake of

fact which would operate as a ground for opening these accounts. If there were any mistake on either side, it was one of law. The plaintiff's testator acquiesced in the defendant's theory of construction of the will of Silas Tobias. She was represented by an astute and indefatigable attorney, who carefully scrutinized every account that the defendant rendered. As no objections were ever made to these semi-annual accounts of the trustee, I think the same must be held to have been settled and closed, and no further controversy can be allowed as to any items, either of debt or credit, contained in any of them. This, however, applies only to such of said accounts as were rendered and examined by Mr. Palmer prior to that time in 1867 when he first objected. The referee has held, very properly, that he could not consider in the present case any causes of action accruing subsequent to the service of the summons herein on the 28th day of July, 1869. It seems that an order was subsequently entered giving the plaintiff permission to amend her complaint so as to bring in new parties; but that, in the complaint amended under such order, she included additional grounds of action for installments of income accruing after that time. That, as a matter of course, was entirely unauthorized. The referee, or even the court on appeal, has the right to amend the pleadings so as to conform them to the proof; but neither the referee nor the court has the power to amend the pleadings so as to give the plaintiff the benefit of facts occurring after his action was commenced. This was in effect what plaintiff sought to obtain; and the referee did not err in refusing to consider any portions of income which accrued after July 28, 1869, or any accounts rendered concerning the same. But, after careful consideration, I am constrained to hold that the referee erred in entirely dismissing this complaint. The plaintiff was entitled to an accounting as to those installments of income, and the accounts referring to and covering the same, respectively, accruing and rendered between the time in the year 1867 when Hannah Tobias' attorney raised the first objection to the theory of accounting which she had acquiesced in theretofore and the commencement of this action. The principle of account stated, of course, fails immediately when an objection to such account is raised. One of defendant's witnesses, a daughter of the trustee, testifies as follows: "*Question.* When was the objection made? State the time as nearly as you can. *Answer.* As nearly as I can remember, it was 1867 or 1868. *Q.* Now, you speak of the first objection that you heard as being in 1867 or 1868. Was any ground of objection stated by Mr. Palmer at that time? *A.* He objected to signing the receipts in full at that time. I think he objected to signing the receipts in full." Uniformly before that time Mr. Palmer had receipted in full for each semi-annual installment of "net income," after carefully examining the account rendered of the preceding half year's management. The referee endeavors to bring the accounts rendered subsequently to the making of such objection also under the principle of account stated, on the ground that the objection made by Mr. Palmer was not to the account itself, or to the theory upon which it was made up, but simply to the form of receipt. I cannot agree with him. If one is attempting to invoke the doctrine of account stated, the mere form of a receipt given may be vital. The very essence of the principle is that one party has rendered another an account which he considers full and final as to all transactions included in it to date, and the other party acquiesces as to the conclusiveness and binding force of such account, either expressly or by silence for a reasonable time. The use of the words "on account," in itself, in receipting under such circumstances, shows that the party signing such receipt does not consider the account to which it refers a finality. Such words have, moreover, a special significance in the present case by reason of the deliberate change from the old form of receipt. As to those rents, therefore, accruing after the time in 1867 when Mr. Palmer first objected and began giving receipts, not in full, but on account, and up to the

date of the commencement of this action, the referee should have taken and stated the accounts of the parties. In this respect he erred, and for this reason the judgment must be reversed, and a new trial ordered, with costs to abide the event.