ALLISON & VER VALEN CO., INC., Plaintiff, *v.* JOHN McNEE and Others, as Trustees under a Trust Agreement Dated November 4, 1933, for the Benefit of Creditors of the National Bank of Haverstraw and Trust Company, and JOHN P. BARBI and Others, Defendants.

Supreme Court, Rockland County, February 3, 1939.

*Kennedy, Teale & Kennedy,* for the plaintiff.

*Thomas A. Shankey,* for the defendants John McNee and others, as trustees.

*Sidney W. Fischman,* for the defendants R. & R. Plumbing Supply Company and others.

JOSEPH MORSCHAUSER, Official Referee. Plaintiff seeks foreclosure of a mechanic's lien on realty of which the title is alleged to be in the defendants McNee, Ducey and Hartt as trustees for creditors of the National Bank of Haverstraw and Trust Company under an agreement dated November 4, 1933, executed by said bank and the defendants McNee and Ducey in pursuance of the provisions of section 207 of title 12 of the United States Code, a section enacted by what is commonly described as the "Bank Conservation Act." The defendant trustees obtained title through a deed to them executed by one Alfred Homes Lewis for himself and as attorney-in-fact for Alice Montague Lewis dated February 23, 1935, and also through a further deed executed by Alice Montague Miller, formerly Alice Montague Lewis, dated January 22, 1937. These conveyances of the realty to the trustees were apparently executed and delivered to avoid foreclosure of a mortgage incumbering it that was part of the trust estate held by the trustees. The other defendants, except defendant Barbi, counterclaimed for the foreclosure of liens either in their own right or as assignees of others. All the liens are founded upon the providing of materials or labor in the improvement and enlargement of a house on the land supplied at the request of the defendant Barbi, to whom defendant trustees had given, together with actual possession, a seven months' lease of the premises, by the terms of which Barbi had the option to purchase the realty for $4,000 during the period

of the lease. Barbi paid none of the defendants, did not exercise his option to buy and. absconded.

Plaintiff and the other defendants seek to subject the realty of defendant trustees to mechanics' liens upon the assertion that said trustees by their conduct with knowledge consented, within the meaning of section 3 of the Lien Law, to the providing of labor and materials for the improvements made upon their land. The action was referred to me to hear, try and determine and numerous hearings followed at which over three hundred pages of minutes were taken. The lease containing the option forbade any improvements upon the land without the written consent of the trustees, but the lienors seek to meet this with proof that possession was actually given almost a month before the period named in the lease and materials were provided and labor performed at least two or three weeks before the beginning of that period with knowledge and consent of the trustees. The issues of knowledge and consent were actively litigated on the hearings.

It is my opinion that the defendant trustees were entirely without authority to contract for improvements upon the trust real estate, and since their deliberate effort to contract for them would in no way bind the trust estate it can certainly not be charged through some implication raised by section 3 of the Lien Law. It is even doubtful that they had authority to take the deed from the owner of the mortgaged premises, but probably the agreement under which they acted authorized that by the authorization to compromise claims.

It is a principle of the law of trusts that a trustee has only the authority granted by the instrument under which he holds, either deed or will. This fundamental rule has existed from the beginning and is still law. It applies to every kind of trustee, whether a trustee to hold, invest and pay over income or a mere trustee to sell or to liquidate for the benefit of creditors. Exceptions and variations, creatures of statute, there now are, but they exist only for the trustees for whom they were especially established. The provisions of article 2 of the Debtor and Creditor Law about assignees for the benefit of creditors who are, of course, trustees, and the provisions of articles 3, 4, 5 and 7 of the Debtor and Creditor Law, which provide for insolvent's discharge from debts, his exemption from arrest and imprisonment, a judgment debtor's discharge from imprisonment and generally for trustees of insolvent and imprisoned debtors, enlarge and vary the powers those assignees and trustees would have if the statutes had not been passed. But none of those authorizes any trustee to make improvements upon realty of the trust estate, and if one did it would not empower the

trustees in this action for they were not appointed under the provisions of any part of the Debtor and Creditor Law.

They had absolutely no authority and could not lawfully under their trust instrument improve the realty of which they had obtained title. Necessary repairs present a more difficult question, but the changes wrought by Barbi could not by any stretch of meaning be called repairs. They repaired, as do all improvements, the house to which they were made, but they were not repairs. Nor could any court estimate with accuracy or even a reasonable approximation the value of what incidental repair accompanied, necessarily, ambitious improvements like those made by Barbi, which cost about three-quarters of the probable fair value of the realty without them.

The trustees here were mere liquidators, like any other trustees for creditors. The trust agreement states in its preamble that non-liquid and depreciated assets of said bank shall be transferred to the trustees " to be held by them in trust and liquidated." Some provisions of the agreement indicate that an extended period of liquidation was within the contemplation of all parties and the trustees are expressly given the power to renew obligations held by the trust estate, but nowhere are they authorized to manage and improve realty. Nor is there even an inplication in any of the language of the instrument which would give them that power. They would undoubtedly have the power to preserve any realty which was or became part of the trusteed assets, but the power to conserve could not carry with it under any circumstances the power to improve. They were not authorized by the instrument to speculate in real estate or to invest capital assets in the development of real estate or otherwise. In fact, they are specifically required again and again to distribute capital assets to the creditors entitled thereto and for whom they are trustees.

An examination of the authorities discloses no general power in trustees to make improvements or erect buildings on trust realty. (Restatement of the Law of Trusts, p. 493, § 188, subd. e; 2 Perry on Trusts [7th ed.], §§ 475 and 526; *Green* v. *Winter*, 1 Johns. Ch. 26, 37–40; *Bellinger* v. *Shafer*, 2 Sandf. 293, 297; *Matter of Odell*, 4 N. Y. Supp. 463; *Matter of Rosenberg*, 165 Misc. 92, 93; *Mander* v. *Low*, 12 id. 316, 320, 321.) Seeming relaxations of the rule on closer inspection prove to be cases where the courts, to avoid surcharging a fiduciary's account for amounts spent for improvements, have discovered special authority either in some exceptional circumstances or in an ambiguous grant of authority. Even as they did so they reaffirmed the rule that a trustee has no general power to make improvements or erect buildings upon trust realty.

(*Stevens* v. *Melcher*, 152 N. Y. 551; *Smith* v. *Keteltas*, 62 App. Div. 174.) No reported case that has come to my attention holds that trustees, to liquidate and distribute, or trustees for the benefit of creditors, have any general power to make improvements or erect buildings. And when a trust is expressed in the instrument creating the estate, as it was here both in the agreement of trust and in the deeds of the realty to the defendant trustees, all acts of trustees in contravention of the trust and not authorized by statute are absolutely void. (Real Prop. Law, § 105; *Herbert* v. *Herbert*, 57 How. Pr. 333; *Myers* v. *Bennett*, 7 Daly, 471, 476; *Lang* v. *Everling*, 3 Misc. 530, 532.) The *Herbert*, *Myers* and *Lang* cases just cited are exactly in point, and I have found no New York decisions unequivocally opposed. No contrary rule can be deduced from *Anderson* v. *Dillaye* (47 N. Y. 678), for it falls under the provisions of section 104 of the Real Property Law. Nor is the case of *Tubridy* v. *Wright* (144 N. Y. 519) authority opposed to the view I have taken. The appeal in the Court of Appeals and the exceptions to the referee's report in the lower court (7 Misc. 403) did not bring up the point at issue here. Further, there is nothing in either report to show that the trustees were not authorized by the will of the testator to improve the property, or that the labor and materials ordered by them were not intrinsically repairs instead of improvements.

But the lienors here have a further difficulty to meet. The pleadings all allege that the defendant trustee Hartt is a trustee under the agreement dated November 4, 1933. The agreement itself, however, names only the trustees McNee and Ducey, and they are the only trustees who signed it. Hartt testified in June of 1937 on an examination before trial that he had been a trustee for about eighteen months, but none of the exhibits submitted to me nor anything in the testimony shows how he became a trustee. For the purposes of this action, however, it must be assumed that he is and was a trustee, and there is no evidence in the record that he ever did or said anything upon which a finding might be based that he as trustee consented within the meaning of section 3 of the Lien Law to the improvements made by Barbi.

He says he never saw or talked with Barbi and he never saw the property at any time before he testified. He testified that he had no recollection of any mention at any meeting of the trustees that Barbi was improving the real property or the building or buildings on it. He said that he first had knowledge of the improvements and that they were being made when he was told that he with the other defendant trustees was a defendant in this action. He said that he first found out that materials had been or were being deliv-

ered to the real property when the trustees were made defendants in this action. He testified that after the commencement of the action either the other trustees or the secretary, Mr. Feeney, had said that improvements had been made, but there was no discussion of them and he could not tell who it was said it. He thought, however, they were all present at the time it was said. He said he had never acquired any information concerning the improvements at any time other than at the meeting when he first learned of them and did not talk with Ducey, Feeney or McNee about them anywhere else. He said he never knew that Barbi had any agreements to purchase materials from the plaintiff and that he did not even know whether Barbi paid his rent promptly. He testified that he took an active part in all the meetings of the trustees. He did say, however, that, although he did not know when Mr. Barbi ceased to occupy the premises, he learned at one of the meetings of the trustees that Barbi was no longer there. There is absolutely no substantial direct evidence upon which a finding could rest charging Hartt with knowledge of the improvements or establishing his consent thereto. Unsupported inferences and assumptions alone from the knowledge of one or more of his cotrustees are all there is that would support such a finding, and in my opinion they are not sufficient to overcome his repeated and explicit denials.

It is quite evident that if consent within the meaning of the statute is to be made out from the evidence it must be made out from the acts and speech of two of the three trustees at times other than meetings of the trustees or when they were taking any joint action as trustees. But the rule is well settled that, although trustees may delegate to one another or even to a third party ministerial acts or duties, their duties as trustees, involving discretion or judgment, cannot be delegated, and the action of less than all is of no effect to bind the trust estate. (Restatement of the Law of Trusts, pp. 516, 517, § 194, subd. a; 1 Perry on Trusts [7th ed.], §§ 411, 412; *Cooper* v. *Illinois Central R. R.*, 38 App. Div. 22, 28; *Matter of Johnson*, 123 Misc. 834, 844; *Vohmann* v. *Michel*, 109 App. Div. 659; affd., 185 N. Y. 420; *Matter of Kirkman*, 143 Misc. 342, 346, 347; *Busse* v. *Schenck*, 12 Daly, 12; *Anonymous* v. *Gelpcke*, 5 Hun, 245, 254, 255; *Thatcher* v. *Candee*, 3 Keyes, 157, 160; *Title Guarantee & Trust Co.* v. *New York Juvenile Asylum*, 133 App. Div. 529; *Brennan* v. *Wilson*, 71 N. Y. 502, 507; *Fitchett* v. *Cchu*, 1 N. Y. Supp. 436, 438; *Sinclair* v. *Jackson*, 8 Cow. 543, 582, 583; *Brinckerhoff* v. *Wemple*, 1 Wend. 470.)

A further discussion of the facts is unnecessary. It is unnecessary to consider the questions of law raised by the objection of defendant trustees to the joining of Thiry and the Spring Valley

National Bank as parties or the questions raised by the various assignments by Thiry and R. R. Plumbing & Heating Supply Co. of their interests.

I have signed the proposed findings of the defendant trustees and have indorsed separately each finding and conclusion of the plaintiff and defendant lienors. These will be returned with the copies of this memorandum. Judgment may be submitted accordingly.