Charles WIESNER, Plaintiff,

v.

**ROMO PAPER PRODUCTS CORPORATION EMPLOYEES' RETIREMENT PLAN, Romo Paper Products Corporation, R & R Realty Co., and Samuel Roth, Defendants.**

NO. 79 C 2292.

United States District Court, E. D. New York.

May 6, 1981.

Charles Wiesner, pro se.

Quint, Chill & Greene, by C. Daniel Chill and Robert T. Anker, New York City, for defendants.

## MEMORANDUM ORDER

NEAHER, District Judge.

Plaintiff Charles Wiesner brought this action against Romo Paper Products Corporation ("Romo"), Romo's Employees' Retirement Plan ("Plan"), R & R Realty Co., and Samuel Roth, the managing trustee of the Plan and majority stockholder and president of both Romo and R & R Realty. Plaintiff sues pursuant to an assignment from his father, Alexander Wiesner, which assigned any causes of action the father might have against the defendants. This action is one of several plaintiff has brought in the federal and State courts[1] alleging the defrauding of his father's rights to receive pension benefits under the Plan, and a fair price for his Romo stock upon retiring from the family business at age 79 in March 1974 and selling out his 49% interest to the 51% owner, his son-in-law, defendant Roth. Jurisdiction over this suit is assertedly based upon the Employees' Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132. Defendants have moved to dismiss plaintiff's *pro se* complaint for want of subject matter jurisdiction, or to stay the action pending the outcome of State litigation involving the same issues. Plaintiff has submitted a motion to amend the complaint.

The complaint alleges that the Plan was established pursuant to provisions of federal law and is currently subject to ERISA; that plaintiff's father contributed $26,928 to the Plan's Auxiliary Fund between 1967 and 1972 and that premium payments totaling $19,290.72 were deducted from his salary to purchase a life insurance policy; that the Plan owns the policy and has made Roth the primary beneficiary; and that Wiesner has never received from the Plan either the $26,928 he paid in or the promised life insurance policy or their equivalent, as provided in the Plan. It is further alleged that Roth, as the Plan's "managing trustee" from 1969 to date, has "invested" over 95% of the Plan's assets, including plaintiff's father's contributions, by making interest free loans without due date to Romo and R & R Realty.

ERISA § 502(f), 29 U.S.C. § 1132(f), vests jurisdiction in the federal courts "without respect to amount in controversy or the citizenship of the parties, to grant the relief provided for in subsection (a)" of § 1132. That subsection provides in pertinent part that:

"A civil action may be brought—

(1) by a participant or beneficiary—

\*　　\*　　\*　　\*　　\*　　\*

1. These include *Wiesner v. Roth, et al.*, 79 C 2994, an action concerning the stock sale founded on 15 U.S.C. § 78j and Rule 10b–5, and *Wiesner v. Romo Products, et al.*, Index No. 7372/78 (Sup.Ct., Kings Co.), an action for an accounting, rescission and other equitable relief in relation to the pension plan, life insurance contributions and other transactions. These actions are currently pending. Motions to dismiss for want of subject matter jurisdiction were granted in *Wiesner v. Chill, et al.*, 80 C 1173 (S.D.N.Y. June 27, 1980), an action against Roth and his attorney, Chill, for relief based on the same underlying circumstances, and in *Wiesner v. Blair, et al.*, 79 C 4963 (S.D. N.Y. April 30, 1980), an action to recover against members of Rogers, Hoge and Hills, and Wilkie, Farr and Gallagher, and the law-firms who at different stages represented Wiesner in the State court action, for their alleged conspiracy with Roth and others to mishandle the State court litigation. A further action against these defendants has been filed in this court recently, 81 C 616.

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;

(3) by a participant, beneficiary, or fiduciary

(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

Section 1109(a) provides that:

"Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary and shall be subject to such other equitable or remedial relief as the court may deem appropriate including removal of such fiduciary."

Defendants base their motion to dismiss upon the following provision of ERISA:

"(a) Except as provided in subsection (b) of this section, the provisions of this subchapter . . . shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this and not exempt under section 1003(b) of this title. This provision shall take effect on January 1, 1975.

"(b)(1) This section shall not apply with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975." 29 U.S.C. § 1144.

■ Asserting that plaintiff's father's cause of action arose, and the acts and omissions relating thereto occurred before the effective date of the preemptive provision, and even before ERISA's enactment, defendants argue that State law governs the claims, not ERISA, and that therefore the statute itself cannot provide federal jurisdiction. No other basis for jurisdiction appearing in the complaint—the parties are all citizens of New York—defendants urge the granting of the motion to dismiss.[2]

The problems with plaintiff's suit arise from his attempt to assert as an assignee separate causes of action which his father possessed as a participant or beneficiary under the Romo pre-ERISA Plan, and as trustee of that Plan, a post he allegedly has retained since the Plan became subject to ERISA. For the reasons which follow the Court holds that plaintiff cannot prosecute his father's claims, in either aspect, in a federal action.

■ As a participant or beneficiary, plaintiff's father's claim essentially is that Roth and the Plan breached their fiduciary and contractual obligations to pay him the retirement benefits due him under the terms of the Plan. This obligation matured when plaintiff's father retired. The one certainty in this obvious family conflict is

---

**2.** There is no merit in plaintiff's repeated arguments that federal jurisdiction is available because the defendants' conduct assertedly entails violations of Internal Revenue Code provisions governing pension plans. The sections relied on, 26 U.S.C. §§ 401, 404 and 503, do not create a substantive right that a beneficiary, participant or fiduciary could enforce. See *Cowan v. Keystone Employees' Profit Sharing Fund*, 586 F.2d 888, 890 n.3 (1st Cir. 1978). See also *Nolan v. Meyer*, 520 F.2d 1276, 1280 (2d Cir.), *cert. denied*, 423 U.S. 1034, 97 S.Ct. 567, 46 L.Ed.2d 408 (1975).

The argument that a federal common law governing pre–1975 breaches of fiduciary duty could be fashioned from the jurisdictional grant, *e. g., Reiherzer v. Shannon*, 581 F.2d 1266 (7th Cir. 1978), see also *Morrissey v. Curran*, 567 F.2d 546, 551 (2d Cir. 1977) (Lumbard, J., concurring), has been persuasively rejected as conflicting with the preemptive provision's exception carrying forward State law with respect to pre-1975 causes of action or acts and occurrences. *Cowan v. Keystone, supra*, 586 F.2d at 892–94.

that the retirement occurred in March 1974, well before the enactment and January 1, 1975 effective date of ERISA. · Clearly the father's claim which plaintiff is asserting accrued at that time, too. That claim is now foreclosed from prosecution here by numerous decisions recognizing that read in conjunction with § 1144(a) and (b)(1), § 1132(e) and (a) do not provide subject matter jurisdiction over claims concerning pensions and retirement plans where the act or occurrences underlying the claim took place, or the cause of action itself arose before January 1, 1975. See, e. g., *Malone v. White Motor Corp.*, 435 U.S. 497, 499 n.1, 98 S.Ct. 1185, 1187 n.1, 55 L.Ed.2d 443 (1978); *Landro v. Glenndenning Motorways, Inc.*, 625 F.2d 1344, 1351–52 (8th Cir. 1980); *Cowan v. Keystone Employees' Profit Sharing Fund*, 586 F.2d 888 (1st Cir. 1978); *Reuther v. Trustees of the Trucking Employees of Passaic and Bergen Counties Welfare Fund*, 575 F.2d 1074 (3d Cir. 1978); *Riley v. MEBA Pension Trust*, 570 F.2d 406 (2d Cir. 1977); *Morrissey v. Curran*, 567 F.2d 546, 548 & n.5 (2d Cir. 1977); *Martin v. Bankers Trust Co.*, 565 F.2d 1276 (4th Cir. 1977); *Keller v. Syracuse China Corp.*, 473 F.Supp. 459 (N.D.N.Y.1979); *Bacon v. Wong*, 445 F.Supp. 1189 (N.D.Cal.1978); *Morgan v. Laborers Pension Trust Fund for Northern California*, 433 F.Supp. 518 (N.D. Cal.1977).

Furthermore, the courts have rejected the argument that a failure to pay benefits occurring after ERISA's effective date might constitute a renewed or continuing violation, holding that a cause of action arising from an alleged wrongful deprivation of benefits accrued when plaintiff first became entitled to receive them. See, e. g., *Cowan v. Keystone Employees, supra; Martin v. Bankers Trust Co., supra; Collins v. Trustees of Local 478 Trucking and Allied Industries Pension Fund*, 487 F.Supp. 520, 525 (D.N.J.1980); *Keller v. Syracuse China Corp., supra; Keller v. Graphic Systems of Akron, Inc. Employees Profit Sharing Plan*, 422 F.Supp. 1005, 1007–08 (N.D.Ohio 1976). Here too, any demand for payment of the benefit or restitution of the contributions made after the Plan became subject to ERI-SA would be ineffective to make the claim one arising under ERISA.

█ Nevertheless, the basis for recovery, as clarified by the proposed amended complaint, is not limited to breaches of fiduciary duty or obligations to pay occurring before January 1, 1975. The alleged continued investment of plaintiff's pension contributions as interest-free loans to corporations closely tied to Roth renewed each year, certainly implicates a fiduciary duty devolving upon Roth as trustee of the Plan after enactment of ERISA. Trustees of an ERISA trust have a fiduciary obligation to ensure that the trust's funds are currently invested prudently. See, e. g., *Morrissey v. Curran, supra*, 567 F.2d at 548–49; 29 U.S.C. § 1104(a). Thus, it is no bar to ERISA jurisdiction that the investments, with respect to which a present breach of fiduciary duty is alleged to have occurred, were made before the effective date of ERISA. See *Morrissey v. Curran, supra; Gilliam v. Edwards*, 492 F.Supp. 1255, 1260 (D.N.J.1980); *Freund v. Marshall & Isley Bank*, 485 F.Supp. 629, 638 n.3 (W.D.Wis. 1979); *M & R Investment Co. v. Fitzsimmons*, 484 F.Supp. 1041, 1056 (D.Nev.1980); *Marshall v. Craft*, 463 F.Supp. 493 (N.D.Ga. 1978); *see also Trustees of the Retirement Benefit Plan of the Pittsburgh Press Co. and Pittsburgh Mailers Union Local No. 22 v. Equibank, N. A.*, 487 F.Supp. 58 (W.D.Pa. 1980).

Section 1132(a)(2) plainly enables a "participant" or "beneficiary" to enforce the personal liability of an ERISA trust fiduciary to make good any loss, or account for any profit occasioned by breach of any fiduciary duty owed to the trust. But here it cannot be said that plaintiff's father was ever a "participant" or "beneficiary" of any plan subject to ERISA. The plan under which he contributed money to the trust's auxiliary fund towards his retirement benefits, and under which he was entitled to receive those benefits, was never subject to ERISA. Furthermore, the Plan provided that the fund would purchase a life insurance contract which the trust was to hold until the employee retired or was terminat-

ed. When that happened the fund was supposed to convert the life insurance contract to a contract issued by the insurer directly for the retired employee's benefit.

The trust's obligations to the company's retired employees ended with that conversion. There is no suggestion that under the Plan the trust itself was obligated to pay anything to plaintiff's father after the date of ERISA's enactment. Plaintiff's father's relationship with the Plan as a beneficiary ended upon his retirement. The subsequent enactment of ERISA could not alter this relationship or cause the father to be carried forward as a Plan participant. His rights were fixed by the terms of a plan that was never subject to ERISA, and since he received no benefit from the plan when it became subject to ERISA, neither he nor his assignee can sue to complain of present breaches of fiduciary obligations imposed by ERISA with respect to the plan currently in effect and subject to ERISA.

Undaunted, plaintiff points out that his father was named trustee of the pre-ERISA plan and has not been removed, and consequently insists that pursuant to the assignment he may sue as trustee to enforce a co-trustee's fiduciary obligation under § 1109 to keep the trust assets productive. See 29 U.S.C. § 1132(a)(2). The contention cannot be sustained in light of traditional principles relating to trustee's obligations.

■ Undoubtedly under ERISA, as at common law, each of several trustees is obligated to take proper steps to compel a co-trustee to redress a breach of trust. See Restatement of Trusts, Second, §§ 200, comment e; 224 (1959); 29 U.S.C. § 1105 (a)(3). As trustee, however, plaintiff's father also was under a fundamental duty "not to delegate to others ... the performance of acts in the administration of the trust which the trustee ought personally to perform." II Scott on Trusts, § 171 (3d ed. 1967). The New York courts have followed the well-established rule permitting delegation of "ministerial" acts or duties but not those involving discretion or judgment. See, e. g., *Gates v. Dudgeon*, 174 N.Y. 426, 429, 66 N.E. 1109 (1903); *In Re Osborn*, 252 A.D. 438, 299 N.Y.S. 593, 601 (App.Div.2d Dep't 1937); *Allison & Ver Valen Co. v. McNee*, 170 Misc. 144, 9 N.Y. S.2d 708, 713 (Sup.Ct., Rockland Co. 1939); *In Re Grace's Estate*, 62 Misc.2d 51, 308 N.Y.S.2d 33, 42 (Surrog.Ct., Nassau Co.), aff'd mem., 35 A.D.2d 783, 315 N.Y.S.2d 896 (App.Div. 2d Dep't 1970). In view of the sensitive nature of the determination required to be made before suing a co-trustee,[3] plaintiff's father was obligated to make it himself and could not delegate his duty to his son by an assignment of any cause of action he might have against Roth.[4] *Accord, Powers v. Ashton*, 45 Cal. App.3d 783, 119 Cal.Rptr. 729 (1975).

Accordingly, defendants' motion to dismiss the complaint for want of subject mat-

**3.** *Cf. Auerbach v. Bennett*, 47 N.Y.2d 619, 631, 633, 419 N.Y.S.2d 420, 393 N.E.2d 994 (1979), where the court upheld the delegation to a subcommittee of disinterested directors the corporation's decision whether to press claims against other directors for illegal foreign payments, against a stockholder's assertion that the decision should have been made by outsiders, stating:

"To assign responsibility of the dimension here involved to individuals wholly separate and apart from the board of directors would, except in the most extraordinary circumstances, itself be an act of default and breach of the nondelegable fiduciary duty owed by the members of the board to the corporation and to its shareholders, employees and creditors."

Here the determinations whether Roth had breached any fiduciary duty, as alleged, and whether litigation or some less divisive process was the proper remedy, were decisions plaintiff's father should have made in the first instance as the designated trustee of the retirement plan, if such he was.

**4.** This decision does not contravene New York's statute permitting transfer of causes of action. General Obligations Law, § 13–101 (McKinney 1978). The statute states that

"[a]ny claim or demand can be transferred, except ...

\* \* \* \* \* \*

"[3] where a transfer thereof ... would contravene public policy."

In view of the trustee's obligations outlined above the assignment on which plaintiff relies cannot be construed to permit transfer of the father's cause of action as trustee.

ter jurisdiction is granted and plaintiff's motion to amend the complaint is denied.

SO ORDERED.