809 F.Supp. 729 (1992)
CHEMTECH INDUSTRIES, INC., et al., Plaintiffs,
v.
GOLDMAN FINANCIAL GROUP, INCORPORATED, et al., Defendants.
No. 4:92CV00035 GFG.
United States District Court, E.D. Missouri, E.D.
December 22, 1992.
*730 Fred A. Ricks, Jr., Associate, Robert W. Stewart, Partner, McMahon and Berger, Albert E. Schoenbeck, Partner, Daniel M. Zureich, Schoenbeck and Schoenbeck, St. Louis, MO, for plaintiff Chemtech Industries, Inc.
Charles A. Newman, Partner, Dana E. Underwood, Associate, Thompson and Mitchell, St. Louis, MO, for defendants Goldman Financial Group, Inc., Goldman Group, Inc. Retirement Plan, David L. Goldman and Kathleen A. Keating.
Charles A. Newman, Partner, Thompson and Mitchell, Ronald E. Jenkins, St. Louis, MO, for Boston Safe Deposit Trust Co.

MEMORANDUM AND ORDER
GUNN, District Judge.
This matter is before the Court on a motion for a temporary restraining order or preliminary injunction filed by plaintiffs Stephen E. Platt (Platt), Christopher P. Johnson (Johnson), Chemtech Industries, Inc. (Chemtech), Chemtech Industries, L.P. (CILP) and the Chemtech Industries Inc., Retirement Income Plan (Chemtech Plan). Plaintiffs seek to enjoin a transfer under section 420 of the Internal Revenue Code, 26 U.S.C. § 420, of excess pension funds from the Goldman Group Retirement Plan (Goldman Plan) or the Goldman Financial Group Master Trust (Goldman Master Trust) to a "401(h) account" established for the purpose of funding health benefits for retired participants in the Goldman Plan. The transfer was scheduled to occur on November 22, 1992.
A hearing was held before this Court on November 6, 1992 and was continued on November 20, 1992.
Upon consideration of the entire record in this action including the testimony of witnesses, the evidence introduced and the arguments of counsel, the Court makes the following findings of fact and conclusions of law.

FINDINGS OF FACT
1. Plaintiff, the Chemtech Plan, was an employee benefit plan sponsored by Chemtech for its employees and former employees.
2. Plaintiff Chemtech sponsored the Chemtech Plan prior to its merger into the Goldman Plan. By letter dated April 24, 1992, Chemtech terminated its participation in the Goldman Plan.
3. Plaintiff CILP is a Delaware limited partnership which currently holds all of the stock of Chemtech.
4. Plaintiff Platt was a participant in the Chemtech Plan and is now a participant in the Goldman Plan. Platt is proceeding pro se, without the assistance of counsel. He is currently employed by HCI ChemTech Distribution, Inc. The present value of his accrued benefits under the Goldman Plan is approximately $2,700.00. The present value of Platt's accrued benefits under the former Chemtech Plan was zero because he did not have sufficient service to be vested under that Plan. Platt's benefits will commence under the Goldman Plan in the year 2020.
5. Plaintiff Johnson was a participant in the Chemtech Plan and currently is a participant in the Goldman Plan. Johnson also is proceeding pro se. He is currently employed by HCI Chemicals. The present value of his accrued benefits under either the Goldman Plan or the former Chemtech Plan is approximately $3,200.00. Johnson's benefits will commence in the year 2017.
*731 6. Defendant Kathleen A. Keating is Director of Human Resources for Goldman Financial Group, Incorporated (GFGI) and is a resident of Boston. She was also named as a defendant in the pending lawsuit.
7. Defendant David L. Goldman is President of GFGI and a resident of Rhode Island.
8. Defendant GFGI is the sponsor of the Goldman Plan as well as other pension employee benefit plans which provide benefits to employees of GFGI and its affiliates. GFGI's fiscal year runs from June through July. The fiscal year of the Goldman Plan runs from January through December.
9. The assets of the Goldman and other GFGI sponsored pension plans are held in trust by Boston Safe Deposit Trust Company (Boston Safe) under the Goldman Master Trust. Boston Safe has not been named in plaintiffs' pending motion but is a named defendant in plaintiffs' original lawsuit.
10. In 1989, as a result of its acquisition of Chemtech's stock, GFGI took ownership of Chemtech's assets including the Chemtech Plan. In 1990, GFGI established the Goldman Plan for the purpose of providing retirement benefits to its employees. In July 1990 the boards of both GFGI and Chemtech voted to merge the Chemtech Plan into the Goldman Plan. Thereafter, another employee benefit plan, certain other employees and former employees were merged into and added as participants to the Goldman Plan.
11. In April of 1991 GFGI and the former owners of Chemtech entered into a Settlement Agreement transferring ownership of Chemtech to CILP. The portions of the Settlement Agreement relevant to this dispute provide as follows:
a. The Goldman Plan would retain all plan assets and subsequent to completing certain requirements would manage and administer the plan without restriction including retaining the right to merge the plan with other plans, spin off assets or terminate the plan.
b. All benefits of the Chemtech population would cease accruing no later than June 30, 1992.
c. The Goldman Plan would pay all benefits to the Chemtech population as and when they came due.
d. To insure that enough assets would be readily available to fund the pension obligations of the Chemtech population in the eventuality of a spinoff to subsequent purchaser of Chemtech, the Goldman Plan would establish a segregated asset account in the amount of the present value of the accrued benefits of the Chemtech population.
Settlement Agreement at 3.g.
12. In order to implement the aforementioned provisions of the Settlement Agreement, the Goldman Plan hired Wyatt Company (Wyatt), a nationally recognized actuarial firm, to calculate the amount necessary to fund the pension obligations of the Chemtech population (the present value of the accrued benefits of the Chemtech participants) under the Settlement Agreement. In addition, at Chemtech's request, the Goldman Plan obtained a second actuarial assessment of the amount necessary to fund these benefits from another national actuarial firm, William A. Mercer Incorporated.
13. The figures arrived at by these two firms were used by the Goldman Plan in determining the amount to be placed in the segregated asset account. Chemtech received notice of this figure and did not contest the amount designated. This sum of money is currently held in the Goldman Master Trust in a segregated asset account.
14. In accordance with 26 U.S.C. § 420, the Goldman Plan transferred excess pension assets from the Plan to a 401(h) account in January 1992.
15. On September 21, 1992, the Goldman Plan notified its participants, including Platt and Johnson, of a proposed transfer of excess pension assets from the Plan to a 401(h) account for the purpose of funding retiree health care benefit expenses. On September 22, 1992, the Goldman Plan filed the required Section 1021(E)(2) notification *732 of intent to transfer excess funds with the Department of Labor as required by law. This transfer was scheduled to occur November 22, 1992.
16. The 401(h) account to be established as a result of the November 22, 1992 transfer funds health benefits of retired participants from the Goldman Plan who are also entitled to receive pension benefits under the Goldman Plan as of the date of the transfer.
17. The uncontroverted testimony offered by defendant indicates that the moneys to be transferred will not come from the segregated account.
18. An enrolled actuary employed by Wyatt has determined that the assets remaining in the Goldman Plan after the transfer will be more than sufficient to fund all of the accrued benefits of the participants in the Goldman Plan, including members of the Chemtech population such as Platt and Johnson.
19. The Court finds that the valuation performed by Wyatt applied reasonable actuarial assumptions. The assumptions regarding interest rates and the mortality tables employed are consistent with those used in valuing the assets of the former Chemtech Plan. These assumptions also are consistent with the assumptions used in valuing other GFGI employee benefit plans; and with the assumptions used by Wyatt in valuing other employee benefit plans on behalf of other plan sponsors.
20. Furthermore, the Court finds that the assumption concerning interest rates is within the range of interest rate assumptions permitted by the Internal Revenue Service.
21. The uncontroverted testimony offered by defendant indicates that the 401(h) account funds retiree health benefits for participants under the Goldman Plan.

CONCLUSIONS OF LAW
1. Plaintiffs bring this motion for temporary restraining order or preliminary injunction pursuant to Rule 65 of Federal Rules of Civil Procedure. Plaintiffs' motion does not include an explicit request for relief pursuant to ERISA's injunctive relief provisions. 29 U.S.C. § 1132(a)(3).
2. Plaintiffs have failed to introduce any evidence that CILP had any responsibility for, obligation to, or rights under the Chemtech or Goldman plans. Accordingly, the Court concludes that CILP lacks standing to pursue the allegations of the present motion.
3. The Chemtech Plan ceased to exist as a separate entity at the time of its merger into the Goldman Plan. Therefore, the Court concludes that the Chemtech Plan is not a proper party plaintiff and lacks standing to raise any of the issues before the Court in the present motion.
4. Chemtech, as a private party, lacks standing to bring this motion under either the Internal Revenue Code or ERISA.
5. The allegations in plaintiffs' motion relate to a transfer of funds to be performed in Boston, by Boston Safe, a Massachusetts citizen, at the direction of a Plan Administrator who is also a citizen of Massachusetts. Plaintiffs have made no showing of any contacts between the Goldman Plan, David Goldman or Kathleen Keating and the State of Missouri such that this Court can constitutionally exercise jurisdiction over these defendants with respect to the allegations set forth in this motion. Accordingly, the Court finds it cannot properly exercise jurisdiction over defendants Goldman, Keating, Goldman Plan or Boston Safe with respect to this motion. Therefore, the only party defendant properly before the Court with respect to this motion is GFGI.
6. GFGI asserts that the standard to be applied by this Court in determining the availability of injunctive relief is the standard set forth by the Eighth Circuit Court of Appeals in Dataphase Systems, Inc. v. CL Systems, Inc., 640 F.2d 109, 114 (8th Cir.1981) (en banc). Under Dataphase, this Court is required to consider the following factors: 1) the threat of irreparable harm to the movant; 2) the probability that movant will succeed on the merits; 3) the state of the balance between this harm and the *733 injury that granting the injunction will inflict on other parties litigant; and 4) the public interest. Dataphase, 640 F.2d at 113.
7. Plaintiffs contend that because ERISA authorizes injunctive relief to prevent a violation of the statute they need only demonstrate that the injunction is necessary to avoid a violation of ERISA and that irreparable injury need not be shown. Plaintiffs cite no Eighth Circuit authority in support of this contention. However, the Eighth Circuit recently recognized, in the context of a non-ERISA case, the "well-established rule that where Congress expressly provides for injunctive relief to prevent violations of a statute a plaintiff does not need to demonstrate irreparable harm to secure an injunction." Burlington Northern RR v. Bair, 957 F.2d 599, 601 (8th Cir.1992) (citations omitted). Whether the Eighth Circuit would apply, in the context of an ERISA case, the reasonable cause standard set forth in Burlington Northern remains unclear. See Howe v. Varity Corp., 896 F.2d 1107, 1109 (8th Cir.1990) (applying traditional equitable principles to determine propriety of granting injunctive relief under ERISA).
The Court finds it unnecessary to resolve this dispute because, regardless of the standard applied, plaintiffs have failed to meet their required burden of proof. See, e.g., Gelco Corp. v. Coniston Partners, 811 F.2d 414 (8th Cir.1987) (movant bears complete burden in injunction matters). On the basis of the evidence presented, the Court concludes that plaintiffs have failed to establish either a threat of irreparable harm or reasonable cause to believe that an ERISA violation will result in the absence of such relief.
8. Plaintiffs Platt and Johnson are vested participants under the Goldman Plan who are not eligible to receive their benefits under the Plan before the year 2017. The combined value of plaintiffs' accrued benefits is approximately $5,000. An amount necessary to fund the accrued benefits of Platt and Johnson as well as the other Chemtech participants was placed in the segregated asset account provided for under the Settlement Agreement. Undisputed testimony establishes that the funds to be transferred do not derive from the segregated asset account. Accordingly, the Court concludes that plaintiffs have failed to establish irreparable harm in that the proposed transfer will not in any way affect the solvency of the fund. The transfer will affect only the amount of excess assets over and above those necessary to fund the accrued benefits of plaintiffs Platt and Johnson.
9. The Court further concludes that plaintiffs have not met their burden of demonstrating a reasonable likelihood that a violation of ERISA will occur in the absence of injunctive relief. Plaintiffs assert that the proposed transfer violates the prudent man standard of care set forth in ERISA's fiduciary duty provision, 29 U.S.C. § 1104(a). That provision states:
Subject to sections 1103(c) and (d), 1342 and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of....
Section 1103(c) sets forth the allowable purposes of holding plan assets and provides that the assets of a plan shall never inure to the benefit of any employer "[e]xcept as provided ... under section 420 of Title 26 as in effect on January 1, 1991." Accordingly, under a clear reading of the statute, section 420 transfers are exempt from the prudent man standard of 29 U.S.C. § 1104.
10. In addition, plaintiffs contend that the proposed transfer violates the prohibited transactions provision of ERISA, 29 U.S.C. § 1106. Section 1106 prohibitions are applicable "[e]xcept as provided in section 1108 of this title." Section 1108 provides in pertinent part that "[a]ny transfer in a taxable year beginning before January 1, 1996, of excess pension assets from a defined benefit plan to a retiree health account in a qualified transfer permitted under section 420 of Title 26" is not a prohibited transaction under section 1106. 29 U.S.C. § 1108(b)(13). The interaction of these statutory provisions indicates that transfers which meet the requirements of *734 section 420 are exempt from the fiduciary duty standards of 29 U.S.C. § 1106.
11. To the extent that plaintiffs seek to impose fiduciary duties other than those enumerated in the sections 1104 and 1106, the Court finds that their argument must fail for the reasons set forth in Bigger v. American Commercial lines, 862 F.2d 1341 (8th Cir.1988). In addition, this Court declines to impose its own fiduciary requirements in the face of Congress' express intent to exempt section 420 transfers from those very provisions.
12. Plaintiffs further assert that the transfer fails to comply with the requirements of 26 U.S.C. § 420. Plaintiffs have offered no legal authority in support of their assertion. The Court concludes that this argument must fail because there is no private cause of action under the Internal Revenue Code for enforcement of section 420. Section 420 merely sets forth certain requirements which must be met in order that a benefit plan obtain favorable tax status. Although benefit plans which fail to comply with these requirements will not obtain favorable tax status, section 420 does not prohibit transfers which fail to meet the requirements set forth therein. Cf. Reklau v. Merchants National Corp., 808 F.2d 628, 631 (7th Cir.1986) (no private cause of action under § 401), cert. denied, 481 U.S. 1049, 107 S.Ct. 2180, 95 L.Ed.2d 836 (1987); Cowan v. Keystone Employee Profit Sharing Fund, 586 F.2d 888, 890 n. 3 (1st Cir.1978) (§ 401 "does not appear to create any substantive rights that a beneficiary of a qualified retirement trust can enforce"); see also Trenton v. Scott Paper Co., 832 F.2d 806, 810 (3rd Cir.1987); cert. denied, 485 U.S. 1022, 108 S.Ct. 1576, 99 L.Ed.2d 891 (no implied private cause of action under § 416(g)); Wiesner v. Romo Paper Products Corp., 514 F.Supp. 289, 291 n. 2 (E.D.N.Y.1981) (§§ 401, 404 and 503, "do not create a substantive right that a beneficiary, participant or fiduciary could enforce"); Vermeulen v. Central States, Southeast and Southwest, 490 F.Supp. 234, 237 n. 6 (M.D.N.C.1980) (agreeing with Cowan). See generally, 60 Am.Jur.2d Pensions and Retirement Funds § 1180 (IRC provisions governing pension plans do not create substantive rights that can be enforced by beneficiaries, participants, or fiduciaries of a qualified retirement trust).
13. Assuming for the sake of argument the existence of a private cause of action to enforce 26 U.S.C. § 420, the Court further concludes that plaintiffs have failed to establish any breach or violation of the requirements of section 420. Plaintiffs argue that the proposed transfer fails to meet the requirements of section 420 because it violates the "one transfer" per year rule. Section 420(b)(2)(A) provides that "[n]o more than 1 transfer with respect to any plan during a taxable year may be treated as a qualified transfer...." Plaintiffs assert that the applicable year is the Goldman Plan's "taxable year", January through December, in which case a November 1992 transfer would constitute a second transfer for the year 1992. GFGI contends that the "taxable year" referred to in the statute is the plan sponsor's fiscal year, June through July, in which case the November 1992 transfer would represent the sole transfer occurring since June 1992.
14. Upon review of the statutory provisions, the Court concludes that the applicable year for purposes of section 420 transfers is the plan sponsor's fiscal year. Defined benefit plans are not subject to taxation; therefore, the phrase "taxable year" is simply not applicable to the Goldman Plan. If the plan sponsor's fiscal year, June through July, is employed, the January 1992 and November 1992 transfers do not violate the one transfer per year rule.
15. Plaintiffs also assert that the proposed transfer violates section 420 in that the moneys remaining after the transfer will not be sufficient to fund the benefits of the participants. Specifically, plaintiffs' expert testified that the funds remaining in the Goldman Plan after the transfer would be insufficient to cover the plan's "termination liability." Termination liability is defined as the amount necessary to fund the benefits of the plan participants in the event of immediate termination of the plan.
*735 Section 420 does not incorporate the "termination liability" standard applied by plaintiffs' expert. The appropriate test for determining adequacy of funding after a section 420 transfer is whether there are sufficient funds remaining in the plan to cover current liability, the obligation to fund the benefits of the participants as they come due. This standard takes into account the fact that the plan will continue as an on-going plan and not be terminated in the near future. This is the standard set forth in 26 U.S.C. § 412 and specifically incorporated into section 420.
16. The actuarial determination performed by Wyatt is consistent with the "current liabilities" standard of section 412. Plaintiffs have offered no evidence to the contrary.
17. Finally, plaintiffs failed to sustain their burden of demonstrating that the proposed transfer violates section 420 because the transferred funds will be used to pay retiree health benefits for persons who are not participants under the Goldman Plan. Defendant introduced testimony that the account funds retiree health benefits for participants under the Goldman Plan. Plaintiffs failed to introduce any evidence to the contrary.
18. For the reasons set forth in conclusions of law numbered 9-17, the Court further concludes that plaintiffs are unable to establish a reasonable likelihood of success on the merits to support their request for injunctive relief under the Dataphase standard.
19. Plaintiffs have failed to sustain their burden of establishing irreparable harm and a likelihood of success on the merits. Therefore, the Court need not address the remaining Dataphase requirements in detail. See Gelco Corp. v. Coniston Partners, 811 F.2d at 418; Harris v. United States, 745 F.2d 535, 536 (8th Cir. 1984).
20. The Court notes, however, that the public interest implicated by plaintiffs' request for injunctive relief does not favor enjoining the transfer. In enacting section 420 Congress sanctioned the use of excess pension assets for the payment of retiree health benefits and recognized that the use of assets from overfunded plans to provide for retiree health benefits would serve the public interest. An injunction barring the transfer of such assets for the purpose of providing retiree health benefits would frustrate this public interest.
On the basis of the foregoing, IT IS HEREBY ORDERED that plaintiffs' request for a temporary restraining order or preliminary injunction shall be and it is denied.